UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTARIAN PARTY OF MICHIGAN,
GARY JOHNSON, and DENEE                                Case No. 12-cv-12782
ROCKMAN-MOON,

                    Plaintiffs,                        Paul D. Borman
                                                       United States District Judge

v.

RUTH JOHNSON, Secretary of State of
Michigan, in her official capacity,

                    Defendant,


REPUBLICAN PARTY OF MICHIGAN,

                    Intervenor/Defendant.
_____/


AMENDED[1] OPINION AND ORDER
(1) GRANTING DEFENDANT RUTH JOHNSON'S MOTION TO DISMISS (ECF NO. 4);
(2) GRANTING INTERVENOR-DEFENDANT REPUBLICAN PARTY OF MICHIGAN'S
MOTION TO DISMISS (ECF NO. 21); AND
(3) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 6)


This matter is before the Court on Defendant Ruth Johnson's Motion to Dismiss (ECF No.

---

[1]  The only amendment to the Court's September 7, 2012 Opinion and Order is the striking of one sentence and a citation appearing on page 17 of the Court's Opinion:  "To avoid . . . (1980)."  The Court did not in any way rely on this language or citation in reaching its decision on the merits. Indeed the Court noted, also at page 17 of its Opinion, that Mr. Anderson's name did appear on the primary ballot as a candidate for the Republican Party but, as explained in the Bureau of Elections Director's May 3, 2012 letter to Plaintiff Gary Johnson, also cited by the Court at page 17 of its Opinion, Anderson's efforts to also appear as a candidate on the general election ballot as the Anderson Coalition's candidate were not challenged at that time by the Bureau of Elections because Michigan did not then have in place a statutory procedure for qualifying an independent candidate. That procedure is in place today and Plaintiff Gary Johnson could have availed himself of this procedure, thus distinguishing the instant case from the situation faced by John Anderson in 1980.

4); Intervenor-Defendant Republican Party of Michigan's Motion to Dismiss (ECF No. 21); and Plaintiffs' Motion for Summary Judgment (ECF No. 6).

A hearing was held on Thursday, September 6, 2012, at which Plaintiffs, Defendant Ruth Johnson and Intervenor-Defendant Republican Party of Michigan appeared and were heard. For the reasons that follow, the Court (1) GRANTS Defendant Ruth Johnson's Motion to Dismiss, (2) GRANTS Intervenor-Defendant's Motion to Dismiss, (3) DENIES Plaintiffs' Motion for Summary Judgment and (4) DISMISSES Plaintiffs' Complaint with prejudice.[2]

**INTRODUCTION**

Plaintiff Gary E. Johnson ("Gary Johnson") ran for the Republican nomination for President of the United States in Michigan's February, 2012 presidential primary and lost. Gary Johnson now seeks to have his name placed on the ballot in Michigan as a candidate for President of the United States in the November 6, 2012 general election as the Libertarian Party nominee. Michigan statute

---

[2]  As the Court noted in its prior Order Granting Intervenor-Defendant the Republican Party of Michigan's Motion to Intervene (ECF No. 23), Plaintiffs' dilatory conduct in this action has put the Court and the Defendant Secretary of State in an unnecessarily haste-driven position. The Court put on the record at the September 6, 2012 hearing on this matter its findings regarding Defendant Ruth Johnson's claim that Plaintiffs' motion for an expedited hearing on the merits of this matter should have been denied on the basis of laches. Although the Court has decided, given the importance of the issue to reach the merits, Plaintiffs' failure to act with any sense of urgency in this matter until August 19, 2012 is reprehensible. Plaintiffs were well aware, as early as May 3, 2012, that Johnson would be denied general election ballot access in Michigan, but waited until June 25, 2012 to file their Complaint, further waited until July 18, 2012 to serve the Defendant, further waited until August 2, 2012 to file their non-emergency motion for summary judgment, and vexatiously waited until August 19, 2012 to apprise the Court that their motion was of an urgent nature. Any effort on Plaintiffs' part to stay this Court's decision pending appeal should be met with great skepticism. *See Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000) ("The plaintiffs could have pursued their cause more rigorously by filing suit at an earlier date. A state's interest in proceeding with an election increases as time passes, decisions are made, and money is spent."). *See also* Affidavit of Christopher M. Thomas, August 31, 2012. (ECF No. 16, Ex. 2) (detailing the time challenges presented by Plaintiffs' delay in pursuing this matter).

MCL 168.695, known as the "sore loser statute," provides that an individual who has placed his or her name on the primary ballot as a candidate for nomination of one political party is not eligible to run as a candidate for any other political party at the general election immediately following that primary. Pursuant to the sore loser statute, the Defendant Secretary of State has excluded Gary Johnson's name from the ballot for the upcoming November 6, 2012 general election as the Libertarian Party candidate for President of the United States. Plaintiffs Gary Johnson, the Libertarian Party of Michigan ("LPM") and Denee Rockman-Moon ("Rockman-Moon"), the Chairperson of the LPM, filed this action claiming that application of the statute to Gary Johnson violates their First and Fourteenth Amendment rights under the United States Constitution. Plaintiffs seek injunctive and declaratory relief invalidating Michigan's sore loser statute, both facially and as applied to Gary Johnson, that would require the placement of Gary Johnson's name as the Libertarian Party Candidate for President of the United States on the ballot in the upcoming November, 2012 general election.

## I.    BACKGROUND

The facts in this matter are undisputed. Plaintiff Gary Johnson resides in Santa Fe, New Mexico and served as governor of New Mexico from 1995-2003. (ECF No. 6, Pls.' Mot. Summ. Judg. Ex. B, July 27, 2012 Affidavit of Gary Johnson ¶ 1.) Throughout much of 2011, Gary Johnson sought the Republican Party nomination for President of the United States. (*Id.* ¶ 3.)

In November, 2011, Gary Johnson's then-Republican campaign contacted the Michigan Secretary of State on several occasions to ensure that Gary Johnson would be recognized as a candidate for the Republican presidential nomination. In a November 8, 2011 Letter from Gary Johnson's campaign scheduler, Grant K. Huihui, to Secretary of State Ruth Johnson, Mr. Huihui

stated that: "Governor Gary E. Johnson is fully committed to running a national campaign seeking the Republican nomination for the office of President of the United States of America.  Governor Johnson has traveled through more than 35 states in his ongoing efforts to spread his message, while seeking the Republican nomination.  Governor Gary E. Johnson respectfully requests to be placed on Michigan's primary election ballot."  (ECF No. 6-8, p. 9, Pls.' Mot. Summ. Judg. Ex. F, November 8, 2011 Letter to Ruth Johnson.)

On November 21, 2011, Defendant Secretary of State Ruth Johnson, pursuant to MCL § 168.614a(3), sent Gary Johnson a letter informing him that his name would be included on Michigan's Presidential Primary ballot as a candidate for the Republican party unless he filed an affidavit, no later than 4:00 p.m. (E.S.T.) on Friday, December 9, 2011, specifically stating that he was not a presidential candidate of the Republican party.  (ECF No. 6-8, p. 11, Pls.' Mot. Summ. Judg. Ex. F, November 21, 2011 Letter to Gary Johnson.)

Gary Johnson subsequently attempted to withdraw from the Michigan presidential primary but his request, received by email at 4:03 p.m. on December 9, 2011, after the 4:00 p.m. statutory deadline set forth in MCL § 168.615a(1) had passed, was ineffective.  (ECF No. 6-8, p. 1-2, Pls.' Mot. Summ. Judg. Ex. G, May 3, 2012 Letter to William W. Hall.)  Because Gary Johnson did not timely submit an affidavit seeking to have his name removed from the ballot in compliance with the deadlines set forth in MCL § 168.615a(1), his name appeared on the ballot as a candidate for the Republican presidential nomination in Michigan's February, 2012 primary election.  Gary Johnson never challenged, or took any legal action to reverse the Secretary of State's decision refusing his untimely request to remove his name from the Michigan primary ballot as a Republican party presidential candidate.  Gary Johnson did not win the Republican party nomination.

4

At its Las Vegas convention held on May 3-6, 2012, the national Libertarian Party, a qualified political party under Michigan law, MCL § 168.560a, but not a major party,  MCL § 168.16, nominated Gary Johnson as its candidate for President. (ECF No. 6-3, Gary Johnson Aff. ¶ 9.)  Gary Johnson's nomination was subsequently ratified by the Defendant LPM and forwarded to the Michigan Secretary State for certification and inclusion of Gary Johnson's name on the November 6, 2012 general election ballot as the Libertarian Party candidate for president.  *Id*. ¶ 10.

The Michigan Secretary of State disqualified Gary Johnson from appearing on the November 6, 2012 general election ballot as a presidential candidate for the Libertarian Party based upon the Michigan "sore loser" law, which prohibits a candidate who appears on the primary ballot for one political party from appearing as a candidate for any other political party at the election following that primary:

> Ineligibility of candidate at subsequent election.
>
> No person whose name was printed or placed on the primary ballots or voting machines as a candidate for nomination on the primary ballots of 1 political party shall be eligible as a candidate of any other political party at the election following that primary.

MCL § 168.695.

Plaintiffs claim that the Defendant Secretary of State wrongfully refused to place Gary Johnson's name on the Michigan ballot for the November 6, 2012 general election as the Libertarian Party candidate for president because, *inter alia*, Michigan's sore loser statute does not apply to presidential candidates.  Plaintiffs do not dispute that facially, by its clear and unambiguous terms, the statute can be read to apply to a presidential candidate such as Gary Johnson.  Plaintiffs argue, however, that the statute should not be applied to presidential candidates because the "real candidates" in a presidential election are the candidates for presidential elector, not the presidential

5

candidate.  Plaintiffs also argue that application of the sore loser statute to Johnson's Libertarian Party candidacy for President of the United States violates their First and Fourteenth Amendment rights.

## II.  STANDARD OF REVIEW

### A.    Federal Rule of Civil Procedure 12(b)(6) - Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570.  The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6

> inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 2499, 2509 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

**B.      Federal Rule of Civil Procedure 56 - Motion for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof."   Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of  'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323;  *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial.  *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).  "'The

8

central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## III.   ANALYSIS

### A.   The Impact of the Michigan Sore Loser Statute on Associational Rights and the Necessary Level of Judicial Scrutiny

"The impact of candidate eligibility requirements on voters implicates basic constitutional rights. . . . [I]t 'is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.'" *Anderson v. Celebrezze*, 460 U.S.

780, 786-87 (1983) (quoting *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)).[3]  It is likewise beyond

debate, however, "that States may, and inevitably must, enact reasonable regulations of parties,

elections, and ballots to reduce election - and campaign - related disorder." *Timmons v. Twin Cities*

*Area New Party*, 520 U.S. 351, 358 (1997).  The "character and magnitude of the burden" of an

election law regulation on constitutional rights determines the level of scrutiny with which a court

reviews the law:

> When deciding whether a state election law violates First and Fourteenth
> Amendment associational rights, we weigh the "'character and magnitude'" of the
> burden the State's rule imposes on those rights against the interests the State contends
> justify that burden, and consider the extent to which the State's concerns make the
> burden necessary. *Burdick [v. Takushi,* 504 U.S. 428, 434 (1992)], 112 S. Ct., at
> 2063-2064 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S. Ct. 1564,
> 1570, 75 L.Ed.2d 547 (1983)).  Regulations imposing severe burdens on plaintiffs'
> rights must be narrowly tailored and advance a compelling state interest. Lesser
> burdens, however, trigger less exacting review, and a State's "'important regulatory
> interests'" will usually be enough to justify "'reasonable, nondiscriminatory
> restrictions.'" *Burdick, supra*, at 434, 112 S. Ct., at 2063 (*quoting Anderson, supra*,
> at 788, 103 S. Ct., at 1569-1570); *Norman [v. Reed,* 502 U.S. 279, 288-289 (1992)],
> 112 S. Ct., at 704-706 (requiring "corresponding interest sufficiently weighty to
> justify the limitation").  No bright line separates permissible election-related
> regulation from unconstitutional infringements on First Amendment freedoms. *Storer*
> *[v. Brown,* 415 U.S. 724, 730 (1974)], 94 S. Ct., at 1279 ("[N]o litmus-paper test ...
> separat[es] those restrictions that are valid from those that are invidious.... The rule
> is not self-executing and is no substitute for the hard judgments that must be made").

*Timmons*, 520 U.S. at 358-59.

The Supreme Court has held that laws having the same effect as the Michigan sore-loser law,

---

[3]   As the Supreme Court did in *Anderson*, this Court bases its ruling directly on the First and
Fourteenth Amendments and does not engage in a distinct equal protection analysis.  *Anderson*, 460
U.S. at 786 n. 7.  However, as the Supreme Court did in *Anderson*, this Court employs the analysis
relied on in multiple Supreme Court election cases, and several lower federal court cases since,
"applying the 'fundamental rights' strand of equal protection analysis, [] identif[ying] the First and
Fourteenth Amendment rights implicated by restrictions on the eligibility of voters and candidates,
and [] consider[ing] the degree to which the State's restrictions further legitimate state interests."
*Id*.

i.e. precluding a particular candidate from placing his or her name on the ballot under certain circumstances, do not place severe burdens on voters' or candidates' associational rights and therefore need only be reasonable and nondiscriminatory restrictions that serve a State's important regulatory interests.   For example, in *Timmons*, the Court examined the burdens imposed by Minnesota's law prohibiting "fusion" candidacies, in which the same candidate places his or her name on the ballot as a nominee for more than one political party.   Holding that the Court of Appeals had improperly applied a strict scrutiny analysis to the antifusion law, the Court explained:

> Minnesota's laws do not restrict the ability of the New Party and its members to endorse, support, or vote for anyone they like. The laws do not directly limit the party's access to the ballot. They are silent on parties' internal structure, governance, and policymaking. Instead, these provisions reduce the universe of potential candidates who may appear on the ballot as the party's nominee only by ruling out those few individuals who both have already agreed to be another party's candidate and also, if forced to choose, themselves prefer that other party. They also limit, slightly, the party's ability to send a message to the voters and to its preferred candidates. We conclude that the burdens Minnesota imposes on the party's First and Fourteenth Amendment associational rights-though not trivial-are not severe.

> The Court of Appeals determined that Minnesota's fusion ban imposed "severe" burdens on the New Party's associational rights, and so it required the State to show that the ban was narrowly tailored to serve compelling state interests. We disagree; given the burdens imposed, the bar is not so high. Instead, the State's asserted regulatory interests need only be sufficiently weighty to justify the limitation imposed on the party's rights. Nor do we require elaborate, empirical verification of the weightiness of the State's asserted justifications.

*Timmons*, 520 U.S. at 363-64 (internal citations and quotation marks omitted).

Distinguishing *Tashjian v. Republican Party of Conn.,* 479 U.S. 208 (1986), where the Supreme Court engaged in a compelling interest analysis to strike down a closed primary statute that sought "regulation of political parties' internal affairs and core associational activities," the Court in *Timmons* concluded that the Minnesota fusion ban "which applies to major and minor parties alike, simply preclude[d] one party's candidate from appearing on the ballot,  as that party's

11

candidate, if already nominated by another party," and did not impose a severe enough associational burden to warrant strict scrutiny. 520 U.S. at 360. More recently, in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Supreme Court examined the constitutional burdens imposed by Oklahoma's semiclosed primary law, which required voters to switch registration from their existing political party before participating in another party's primary. 544 U.S. at 595. The Supreme Court held that the Oklahoma restriction, which served in part to prevent "sore loser" candidacies, did not severely burden voter associational rights. *Id*. at 593. The Supreme Court recognized, in *Clingman*, that preventing sore-loser candidacies serves an important state interest in preventing "party splintering and excessive factionalism," as well as "the organized switching of blocs of voters from one party to another." *Id*. at 593-94.

The Michigan sore loser statute "neither regulate[s] the [Libertarian] Party's internal decisionmaking process, nor compel[s] it to associate with voters of any political persuasion . . . ." *Clingman*, 544 U.S. at 590. Nor does the statute impose severe burdens on Gary Johnson, who is only barred from the general election as a candidate for a party other than the Republican party. He is free to run as an independent and he was free to make a timely choice to withdraw from the Michigan primary as a candidate of the Republican party so that he could run in the general election as a candidate of the Libertarian party. Nor is it claimed that the statute operates in a discriminatory fashion. The Michigan sore loser statute imposes restrictions that are "not trivial" but "not severe." *Id*. at 589. This court concludes, as the Sixth Circuit did in *Morrison v. Colley*, 467 F.3d 503, 508 (6th Cir. 2006), that the state statute here does not impose a severe burden on the First and Fourteenth Amendment rights of the Plaintiffs or the voters. Thus, the Court reviews the alleged imposition on Plaintiffs' associational rights to determine whether Michigan's interests in applying

12

the law are "sufficiently weighty to justify the limitation imposed." *Timmons*, 520 U.S. at 364.[4]

### B.    Michigan's Sore Loser Statute Applies to Presidential Candidates

Plaintiffs do not attack the constitutionality of Michigan's sore loser statute generally but only as applied to presidential candidates, and in particular to Gary Johnson.  Plaintiffs assert that the sore loser statute simply has no application to presidential candidates,  like Gary Johnson, because "the real candidates in a presidential election are the candidates for presidential elector," and not the candidate himself.  (ECF No. 22, Pls.' Reply, at 2.)  Plaintiffs assert that this proposition is entirely self-evident, solely based upon the involvement of the electoral college process in a presidential election.  The Court disagrees.

First, Michigan law neither makes nor supports such a distinction.  It is true that Michigan law provides that a vote for a party's presidential candidate is not a "direct vote" for those individuals but rather constitutes "a vote for the entire list or set of electors chosen by that political party."  MCL § 168.45.  But nothing in this statute, or elsewhere in Michigan's election laws, suggests that the electors are the candidates.  Notwithstanding the involvement of the electoral college in the process, the individual whose name appears on the ballot, whether it be Gary Johnson, Barack Obama or Mitt Romney, is the only "candidate."  *See* MCL § 168.47 (referring to the

---

[4]  The Michigan sore loser statute does not implicate the type of burdens found to be severe and justifying strict scrutiny review in *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006).  In *Blackwell*, the Sixth Circuit applied strict scrutiny, finding that the right burdened, the ability of a political party to appear on the general election ballot, was critical.  In the instant case, the right of a political party to appear on the Michigan ballot is not at issue.  As discussed, *infra*, however, even were this Court to apply a standard of strict scrutiny to the Michigan sore loser law, which targets the switching of political parties in advance of a general election and applies equally to all candidates, the Court would find that the statute is narrowly enough tailored to meet important state interests in attracting major political parties to participate in Michigan's presidential primary and in preventing party splintering, factionalism and voter confusion.

electors's obligation to cast votes for the "candidates for president and vice president appearing on the Michigan ballot of the political party which nominated the elector"); MCL § 168.558(1) (exempting a "candidate nominated for the office of president of the United States or vice president of the Untied States" from filing an affidavit of identity).[5]   There is no suggestion that anyone's name but that of the candidate appears on the ballot and Plaintiffs distort this reality with their suggestion that the "real candidates" are the electors.

The Supreme Court recognized as much in *Storer*, *supra*, when it rejected, in a footnote, a challenge to the standing of the presidential and vice presidential candidates in that case, Hall and Tyner, to bring an action challenging the California election laws:

> In California, presidential electors must meet candidacy requirements and file their nomination papers with the required signatures. ss 6803, 6830. The State claims, therefore, that the electors, not Hall and Tyner, are the only persons with standing to raise the validity of the signature requirements.  But it is Hall's and Tyner's names that go on the California ballot for consideration of the voters. s 6804. Without the necessary signatures this will not occur. It is apparent, contrary to the State's suggestion, that Hall and Tyner have ample standing to challenge the signature requirement.

*Storer*, 415 U.S. at 738 n. 9.   Similarly, in *Anderson*, *supra*, the Supreme Court noted that Anderson's name had been entered in the Ohio Republican primary as a candidate for president before Anderson made the decision to run as an independent.  460 U.S. at 784 n. 2.  The Court observed that the parties had agreed that Anderson, who in fact had "competed unsuccessfully in nine Republican primaries," had withdrawn his name from the Ohio primary in a timely fashion so that Ohio's sore loser statute, "which disqualifies a candidate who ran unsuccessfully in a party

---

[5]  This statutory section also supports Defendants' argument that when the Michigan legislature sought to exclude presidential candidates from a particular Michigan election law, it was fully capable of doing so. It has not done so in the case of the sore loser statute.

14

primary from running as an independent in the general election," did not apply to him.  *Id*.

Also, in *Storer*, while the Supreme Court was not called upon to decide the constitutionality of California's one-year disaffiliation statute as applied to Hall and Tyner, the presidential and vice presidential candidates, the Court noted without comment that each candidate in fact had satisfied the disaffiliation condition.  415 U.S. at 738.  *See also Anderson*, 460 U.S. at 804 n. 32 (noting without comment that  "Hall and Tyner, the Presidential and Vice-Presidential candidates, apparently complied with the one-year disaffiliation provision.")  By all measures, the California one-year disaffiliation statute more broadly disqualifies potential candidates than does the Michigan sore loser statute.  Yet there is no hint in the Supreme Court's observations in *Anderson* and *Storer* that a sore loser statute would be, as Plaintiffs argue, logically inapplicable to presidential candidates.  Surely if such a fact were as self-evident as Plaintiffs suggest, it would have at least merited comment by the Supreme Court in these contexts.  It did not.

Plaintiffs reliance on *Anderson v. Mills*, 664 F.2d 600 (6th Cir. 1981), to support its assertion that sore loser statutes cannot be applied to presidential candidates is misplaced.  The Kentucky sore loser statute being challenged in *Mills*, provided that: "No candidate who has been defeated for the nomination for any office in a primary election shall have his name placed on voting machines in the succeeding general election as a candidate for the same office of the nomination to which he was a candidate in the primary election."  664 F.2d at 605.  The Sixth Circuit observed that: "Since a candidate cannot lose his party's nomination for president by losing a state's primary election, it would appear that the "sore loser" statute is inapplicable, and does not address itself to presidential candidates."  *Id*.

Significantly, the Michigan statute is drafted differently than the Kentucky statute in that it

does not expressly require that the candidate suffer defeat in the primary race.  The Michigan sore loser statute bars a candidate whose name appears on the primary ballot for one political party from running in the general election as the nominee of a different political party.  It does not bar the candidate from running as an independent candidate in the subsequent general election.  The Michigan sore loser statute does not seek to regulate associational conduct simply based on winning or losing the battle but rather based upon switching sides halfway through the fight.  It does not depend for its application solely upon the candidates prior defeat, but rather depends upon his or her decision to ditch one political party for another.

In *Mills*, the Sixth Circuit declined to apply the Kentucky sore loser statute to a presidential candidate because doing so would logically have led to the conclusion that "not only an independent candidate, but a nominee of one of the two major parties might not be permitted to appear on the general election ballot."  664 F.2d at 605.  The Sixth Circuit observed that: "The constitutionality of such an interpretation is subject to grave doubts."  *Id*.[6]  This constitutional infirmity simply is not presented by application of the Michigan statute to presidential candidates.

Plaintiffs also contend that the story behind the candidacy of John Anderson in the 1980 presidential campaign supports their assertion that the Michigan sore loser statute does not apply to a presidential candidate.  At the time of Anderson's candidacy, however, Michigan had not yet enacted a provision that permitted an independent candidate to obtain access to the general election

---

[6]  As indeed it would have as this is a common occurrence.  For example, when John McCain appeared on the Michigan presidential primary ballot in the 2008 election, he received fewer votes than Mitt Romney, and yet McCain appeared on the general election ballot as the Republican party candidate for president.  As discussed *supra*, such a result would not obtain under the Michigan sore loser statute which depends not upon the mere fact that one lost, but that one also then sought to switch political parties.

ballot.  *See* ECF No. 6-8, p. 3, Pls.' Mot. Summ. Judg. Ex. G, May 3, 2012 Letter to William W. Hall.  Because Mr. Anderson's name appeared on the Michigan primary ballot as a candidate for the Republican party, he was technically precluded by application of Michigan's sore loser law from running at all in the general election. ~~To avoid this unconstitutional predicament, the Supreme Court of Michigan ordered that Mr. Anderson's name be removed from the primary ballot so that he could appear on the general election ballot as the candidate of a different party.~~ *~~Michigan Republican State Central Committee v. Secretary of State~~*~~, 408 Mich. 931 (1980).~~  Plaintiff Gary Johnson does not face this same dilemma as Michigan law now permits him to run as an independent candidate, notwithstanding that he appeared on the primary presidential ballot as a candidate for the Republican party.  MCL § 168.590 to 168.590h.

### C.   The Michigan Sore Loser Statute is not Unconstitutional Either Facially or as Applied to Gary Johnson

The Supreme Court's decision in *Storer*, *supra*, goes a long way toward confirming the constitutionality of the Michigan sore loser statute as applied in this case to Gary Johnson.  *Storer* upheld a California statute prohibiting independent candidates from appearing on a ballot on behalf of one party if they were registered with a different political party within one year of the election. The Supreme Court found such a requirement "expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot."  415 U.S. at 733.  While admittedly Storer, who was challenging the disaffiliation statute, was not a presidential candidate, Hall and Tyner were.  Although the Supreme Court was not called upon to decide the applicability of the California disaffiliation statute to Hall and Tyner, who were challenging a separate California signature requirement, the Court noted, as discusssed *supra*, that both Hall and Tyner had complied with the disaffiliation statute and thus, it was presumed to be a non-issue.  415 U.S. at 738.  As

17

discussed *supra*, the Supreme Court in both *Storer* and *Anderson* had opportunities to decry the

notion of applying a disaffiliation statute to a presidential candidate, yet on neither occasion did it

do so.  Indeed, as discussed *supra*, its oblique discussion of the issue suggests that the distinction

would not have been one of constitutional significance.  Thus, the Court finds that the Supreme

Court's opinion in *Storer* offers significant support for a finding that the less-restrictive Michigan

sore loser statute passes constitutional muster.[7]

In *South Carolina Green Party v. South Carolina State Election Commission*, 612 F.3d 752

(4th Cir. 2010), the Fourth Circuit upheld the constitutionality of the South Carolina sore loser

statute in a non-presidential race, first finding the burden on the Green Party's associational rights

to be non-severe and refusing to engage in strict scrutiny review:

> Because Platt was "disqualified" from appearing on the ballot by operation of the

---

[7] In this regard, this Court is not wholly persuaded by the Fourth Circuit's observation in *Anderson v. Babb*, 632 F.2d 300, 305 n. 2 (4th Cir. 1980) that *Storer* does not foreclose the instant constitutional controversy.  The Fourth Circuit in *Babb* "agree[d] that the "disaffiliation" provision upheld in *Storer* was, in general terms, more restrictive than the "sore loser" provision before the district court in [that] action," but concluded that this did not foreclose a constitutional challenge to the less-restrictive North Carolina sore loser statute.  The Fourth Circuit reasoned that it was "not entirely clear whether the Supreme Court's statements with respect to California's direct party primary for congressional office would apply with equal force to North Carolina's presidential preference primary."  *Id*.  The Fourth Circuit observed that the Supreme Court in *Storer* "fail[ed] to make any reference whatsoever to a presidential preference primary" in the context of the disaffiliation statute.  *Id*.  The Fourth Circuit, however, did not comment on the language from *Storer* discussed *supra*, in which the Court noted that both Hall and Tyner, in their presidential race, had complied with the disaffiliation statute.  This Court finds that this remark, in the Supreme Court opinion, is not without significance.

*Babb* is otherwise distinguished from the instant case by the fact that the statute there, which was "subject to a wide variety of interpretations," precluded a person who "participated" in the presidential primary for one party from being placed on the ballot in the general election as the candidate of a different party.  632 F.3d at 307.  The court specifically avoided the issue of the statute's constitutionality by concluding that in fact Anderson had not "participated" in the primary and therefore could appear as requested on the general election ballot.  *Id*. at 308.

> sore-loser statute, the Green Party could have nominated a substitute candidate. *See* S.C.Code § 7-11-50. Additionally, because Platt's loss did not affect the Green Party's right to nominate its own candidate, but only affected the Green Party's right to nominate Platt as its preferred candidate, we conclude that the burden imposed by the sore-loser statute in this case is no greater than the modest burden imposed by the fusion ban at issue in *Timmons*. *See Timmons*, 520 U.S. at 359, 117 S.Ct. 1364. Therefore, we hold that the impact of the sore-loser statute imposed only a modest burden on the Green Party's association rights, and we will not engage in strict scrutiny of those asserted rights.

612 F.3d at 759.  In *Green Party*, Eugene Platt sought to be a fusion candidate and to run for three different political parties in the primary election, including the Democratic party.  *Id*. at 754.  Platt lost the Democratic primary and was precluded, under South Carolina's sore loser statute, from appearing on the ballot for the general election as the candidate for the Green Party.  *Id*.  In upholding the constitutionality of the sore loser provision as applied to Platt, the court recognized the legitimate state interests at issue:

> Decisions in previous cases have recognized the various state interests furthered by sore-loser statutes. In *Storer v. Brown*, 415 U.S. 724, 735, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Supreme Court addressed a California sore-loser provision, and emphasized the importance of sore-loser statutes in discouraging intra-party feuding and in reserving "major struggles" for general election ballots. *See also Backus v. Spears*, 677 F.2d 397, 399-400 (4th Cir. 1982). The Supreme Court later explained, in *Clingman v. Beaver*, 544 U.S. 581, 596, 125 S.Ct. 2029, 161 L.Ed.2d 920 (2005), that sore-loser statutes prevent a candidate who has lost a party primary or nomination from effecting a "splinter" of a major political party, by joining a minor party while retaining the support of the major party's voters, thereby undermining the major party in the general election.

612 F.2d at 756.  Relying principally on the justifications observed as valid by the Supreme Court in *Timmons*, *supra*, 520 U.S. at 364, the Fourth Circuit concluded:

> We conclude that South Carolina's sore-loser statute advances several state regulatory interests that are important. As we previously have recognized, South Carolina's sore-loser statute advances the state's interest in minimizing excessive factionalism and party splintering. The sore-loser statute also operates to reduce the possibility of voter confusion that could occur when a candidate's name appears on the ballot after losing a primary race. Likewise, the sore-loser statute furthers the

19

state's interest in ensuring orderly, fair, and efficient procedures for the election of public officials.

612 F.3d at 759 (internal citations omitted).

In *National Committee of U.S. Taxpayers v. Garza*, 924 F. Supp. 71 (W.D. Texas 1996), the district court faced precisely the issue confronted by this Court today,  examining the constitutionality of the Texas sore loser statute as applied to a presidential candidate.  *Garza* involved Pat Buchanan's run for president as a candidate for the U.S. Taxpayers Party.  Like Gary Johnson, Buchanan had run for president in the Republican primary and lost.  *Id.* at 72-73.  The Texas sore loser statute made "a person who was a candidate for nomination in a primary ineligible for a place on the ballot for the succeeding general election as the nominee of a political party other than the party holding the primary in which the person was a candidate."  *Id.* at 72.  Plaintiffs were therefore informed that Buchanan, who ran as a Republican in the primary, was not eligible for nomination as the candidate for the U.S. Taxpayers Party in the  general election.  *Id.* at 73. Plaintiffs challenged the constitutionality of the Texas sore loser provision as applied to their efforts to place Buchanan on the November ballot as a candidate for the U.S. Taxpayers party.

Comparing the severity of the restrictions imposed by the Texas sore loser statute to the limitations imposed by the disaffiliation statute found constitutionally valid by the Supreme Court in *Storer*, the court in *Garza*  found the Texas sore loser statute to be justified by the state's legitimate interest in guarding against "divisive and internecine intraparty fights after a political party has decided its nominee."  924 F. Supp. at 74.  Recognizing that a State's interest in protecting political stability may not be "as strong" in the context of a national election, the court nonetheless found the interests sufficient to justify the restriction:

The Court finds that the Defendants' stated reasons for the "sore loser" statute are

valid, legitimate justifications for the restriction. There is no question that the present situation presents an example of intraparty feuding. Pat Buchanan is now, and at all relevant times has been, a Republican.  It is well known that he would like to be in the place of the likely Republican nominee for President, Bob Dole, and that he has sought, in a spirited contest, the Republican Party's Presidential nomination in 1996. The "sore loser" statute is designed to address this very type of intra-party conflict.

Although the State's interest in protecting political stability is not as strong when a national election is at issue, the Defendants' justifications for the restriction are valid. The State's interest in preventing factionalism, intra-party feuding, and voter confusion outweighs the minimal burden the statute places on the Plaintiffs' rights. The Court finds that the Texas "sore loser" statute is a reasonable, nondiscriminatory restriction that protects the integrity and reliability of the electoral process itself and does not overly burden Plaintiffs' fundamental rights as voters.

924 F. Supp. at 74-75.

The court in *Garza* further observed that:

The "sore loser" statute does not prohibit the Plaintiffs from selecting a Presidential nominee and placing his or her name on the ballot. It does not discriminate against independent candidates, nor does it create burdensome ballot access requirements for third parties. Rather, the provision bars Plaintiffs from selecting as their nominee an individual who has already run in a party primary and lost, namely Pat Buchanan. This is not to say that Pat Buchanan could not have been the U.S. Taxpayers Presidential nominee. Had Mr. Buchanan aligned himself with the Plaintiffs earlier and never run in the Republican Primary, there would be no obstacle to the Plaintiffs placing his name on the ballot this November. Furthermore, there is nothing to prevent the U.S. Taxpayers Party from running Mr. Buchanan in the next Presidential election. Although the "sore loser" statute impacts the Plaintiffs' fundamental rights as voters, the magnitude of the injury is not great.

924 F. Supp. at 74.

This Court similarly concludes that the Michigan sore loser statute, which is directed expressly at preventing last minute political party maneuvering, is a reasonable, nondiscriminatory restriction justified by Michigan's important regulatory interests of preventing extended intra party

21

feuding, factionalism and voter confusion.[8]  When viewed, as it must be, in light of the totality of

Michigan's election laws, *see Williams v. Rhodes*, 393 U.S. 23, 34 (1968), its constitutionality is

clear.  Plaintiff Gary Johnson is not prevented from running for the party of his choice, as long as

he has not previously in the same election cycle run as a candidate for a different party.  Importantly,

Gary Johnson is free to place his name on the ballot in the November 6, 2012 general election as an

independent candidate, thus he is not facing complete exclusion from the political race.  Nor is

Defendant LPM prevented from nominating the candidate of its choice, but only prevented from

nominating one of the handful of candidates who chose to run for a different political party in the

primary race.  Gary Johnson's interest in being able to present himself as the candidate of two

different political parties in the same election cycle does not outweigh the State's legitimate and

important interests in protecting the integrity of the election process.  The Supreme Court noted in

*Storer* the important interests served by the more restrictive disaffiliation statute at issue there:

> The general election ballot is reserved for major struggles; it is not a forum for
> continuing intra party feuds. The provision against defeated primary candidates
> running as independents effectuates this aim, the visible result being to prevent the
> losers from continuing the struggle and to limit the names on the ballot to those who
> have won the primaries and those independents who have properly qualified. The
> people, it is hoped, are presented with understandable choices and the winner in the
> general election with sufficient support to govern effectively.

415 U.S. at 735.  Plaintiffs have not convinced the Court that the State's interests in protecting

against excessive factionalism and party splintering, and ensuring that intra party disputes are largely

resolved at the primary stage, reserving the general election stage for the discussion of grander

---

[8]   While the Court believes that ample Supreme Court precedent, particularly *Timmons* and
*Clingman*, discussed *supra*, supports the conclusion that this type of restriction does not impose a
severe enough burden to warrant strict scrutiny review, the Court concludes that the Michigan sore
loser statute, drafted as it is to prevent only the switching of political parties, would meet that more
exacting standard, as it is a narrowly-tailored restriction advancing important state interests.

political ideas, are, as a matter of constitutional principle, less important in the context of a presidential election than in other political contests. Indeed, given that the major political parties have a choice whether or not to participate in the Michigan presidential primary process, the State has an even greater interest in ensuring that the process is even-handed and that the rules are fairly applied, thereby attracting the national political parties, who have a choice, to participate in the process. These candidates can be confident that Michigan's sore loser statute will "temper[] the destabilizing effects" of party splintering that is known to accompany the last minute party-switching tactics of a sore loser. *Clingman*, 544 U.S. at 596.

## IV.   CONCLUSION

The Supreme Court has held that "not every electoral law that burdens associational rights is subject to strict scrutiny," *Clingman*, 544 U.S. at 591, and that "strict scrutiny is appropriate only if the burden is severe." *Id*. at 592. *Clingman* quoted, with approval, from *Timmons*, 520 U.S. at 358, "that states may, and inevitably must, enact reasonable regulations of parties, elections and ballots to reduce election - and campaign - related disorder." Long before *Clingman*, in *Storer*, *supra*, the Supreme Court recognized that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." 415 U.S. at 730.

Like the Minnesota laws approved by the Supreme Court in *Timmons*, Michigan's law does not directly limit the Libertarian Party's access to the ballot. Instead the Michigan law reduces "the universe of potential candidates who may appear on the ballot as the party's nominee only by ruling out those few individuals who . . . have already agreed to be another party's candidate . . . ." *Timmons*, 520 U.S. at 363. Not a "trivial," but not a "severe," burden on associational rights,

23

"justified by "correspondingly weighty," valid state interests in ballot integrity and political stability." *Id*. at 363, 369.

     The Supreme Court noted in *Anderson v. Celebrezze*, *supra*:

> Although a disaffiliation provision may preclude . . . voters from supporting a particular ineligible candidate, they remain free to support and promote other candidates who satisfy the State's disaffiliation requirements.

460 U.S. at 792  n. 12.  So too here!

     Michigan's sore loser statute provides that: "No person whose name was printed or placed on the primary ballots or voting machines as a candidate for nomination on the primary ballots of 1 political party shall be eligible as a candidate of any other political party at the election following that primary."  Plaintiff Gary Johnson's name was placed on the primary ballot this year as a candidate for nomination as the Republican candidate for president.  Mr. Johnson now seeks to appear in the November 6, 2012 as a presidential candidate for another political party, the Libertarian Party.  He is precluded from doing so by Michigan's sore loser statute, a reasonable nondiscriminatory restriction that serves Michigan's "sufficiently weighty" regulatory interests.

     Accordingly, the Court GRANTS Defendant Ruth Johnson's Motion to Dismiss, GRANTS Intervenor-Defendant the Republican Party of Michigan's Motion to Dismiss, DENIES Plaintiffs' Motion for Summary Judgment and DISMISSES the Complaint with prejudice.

IT IS SO ORDERED.

                    S/Paul D. Borman                      
                    PAUL D. BORMAN
                    UNITED STATES DISTRICT JUDGE

Dated:  September 10, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 10, 2012.

S/Denise Goodine
Case Manager